FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 27 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JAMES WALKER,

        Plaintiff,

        -against-

CITY OF NEW YORK, NYPD Officer Jarrett Dill (TAX ID#940094), NYPD Sergeant Jose Capella (TAX ID#915058), NYPD Officer Stephen Penaranda (Tax ID# 937263) and NYPD Officer Vermell Avenger,

        Defendants.
------------------------------------------------------------x

15 CV 500 (NG) (ST)

OPINION AND ORDER

GERSHON, United States District Judge:

Plaintiff James Walker brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant NYPD Sergeant Jose Capella, along with Police Officers Stephen Perananda and Vermell Avenger, violated his Fourth Amendment right to remain free of unreasonable search and seizure when they arrested him without probable cause. Plaintiff also alleges that Police Officer Jarrett Dill failed to intervene to prevent his unlawful arrest. Defendants move for summary judgment on all claims. For the reasons set forth below, defendants' motion is granted. Defendants' unopposed motion to file under seal is granted, but defendants are directed to file redacted versions of the papers on this motion on the public docket.

I.     Facts

Except as otherwise noted, the facts are undisputed. A complaining victim[1] called the police at about 9:55 a.m. on April 22, 2014, to report that he had been chased by two individuals

---

[1] As discussed below, the parties filed this motion under seal and a redacted version of all moving papers is to be filed on the docket to protect the identity of this complaining victim. I will refer to this person as "complainant."

1

with guns. The complainant testified at his deposition that, when an officer arrived at his apartment, he told the officer, "James Walker pulled a gun on me and told me he was going to kill me." The complainant also pointed out his fifth-floor window to an individual outside on the street who he believed to be James Walker. When the Police Officer stuck his head out the window to see the individual the complainant had pointed out, the individual started walking away.

Officer Avenger testified that, when she arrived at the complainant's apartment, the complainant informed her that Walker—who the complainant identified by name—and another perpetrator menaced him with a gun. The complainant described Walker as a black male, heavy set. After the complainant gave his description, Sergeant Capella arrived on the scene accompanied by his driver, Officer Penaranda. Officer Avenger briefed Sergeant Capella on the incident, and the complainant, who was looking out the window, stated that he saw Walker and the other perpetrator. Officer Avenger went over to the window and saw plaintiff walking away from the complainant's housing development, and saw another individual who she assumed to be the other perpetrator walking back toward the development.

Sergeant Capella then put out a description over the radio so that other officers in the area could canvass for the perpetrator. It is undisputed that the description that went out over the radio was that of a black, heavyset man wearing a green baseball cap with a yellow brim, who had fled toward a particular intersection.[2] The Officers testified that this was consistent with the description given to them by the complainant—that Walker weighed between 300 and 350 pounds, had his hair in dreadlocks, and was wearing a green and yellow hat. At his deposition, the complainant testified that the perpetrator had been wearing a green and red hat.

---

[2] The parties identify the intersection, but I am refraining from doing so out of an abundance of caution given the parties' concerns about identifying the complainant.

2

Several minutes later, a call came over the radio stating that an individual fitting the description Sergeant Capella had provided had been stopped at the intersection. Sergeant Capella and Officer Penaranda accompanied the complainant to the intersection in their vehicle. When they reached the intersection, Sergeant Capella instructed the complainant to look at the person who had been stopped and inform him if that was the person who had chased after him with a gun. The complainant identified plaintiff as the person who had chased after him with a gun.[3] Sergeant Capella radioed that the complainant had identified the person who had been stopped as the perpetrator, and the non-party officers who stopped the plaintiff placed him under arrest. Officer Avenger was not one of those officers; she was still on her way to the intersection at the time the identification was made. It is undisputed that no gun was recovered from plaintiff or the surrounding area.

After plaintiff had been arrested, Officer Avenger reviewed camera footage from the housing development where the incident had allegedly taken place. The camera footage showed plaintiff and another individual sitting in front of the complainant's building, but did not show any interaction between plaintiff and the complainant, nor was it apparent from the video that plaintiff was in possession of a firearm. Additionally, the arrest report indicated that plaintiff lived in that housing development as well.

After plaintiff's arrest, the complainant was taken to a precinct where he was re-interviewed by defendant Officer Jarrett Dill, who completed the paperwork for plaintiff's arrest based on the information provided by the complainant, including that plaintiff had menaced him

---

[3] Plaintiff attempts to dispute the identification on the grounds that the description the complainant gave was inconsistent with plaintiff. But none of the discrepancies to which plaintiff points contradict the testimony that the complainant told the officers that plaintiff, whom he named and physically pointed out, was the perpetrator.

with a gun and threatened to kill him. It was Officer Dill who swore out the criminal complaint against plaintiff charging plaintiff with Menacing in the Second Degree, NY Pen. L. § 265.01; Menacing in the Third Degree, NY Pen. L. § 240.26(1), Criminal Possession of a Weapon in the Fourth Degree, NY Pen. L § 120.15, and Harassment in the Second Degree, NY Pen. L § 240.26. The criminal complaint states that the complainant informed Officer Dill that on April 22, 2014, plaintiff and another individual chased after him, while lifting their shirts to display what appeared to be firearms in their respective waistbands. Nothing in the criminal complaint appears to be based on any first-hand observations by Officer Dill, who was never at the scene of plaintiff's arrest and did not meet plaintiff until plaintiff had already been arrested, handcuffed, transported to the precinct, searched, and placed in a holding cell. Plaintiff's allegation of wrongdoing against Officer Dill is based on the fact that Officer Dill was aware, when he completed plaintiff's arrest paperwork, that the video check had been negative, meaning that the video cameras in the housing development had not captured the incident.

Plaintiff was prosecuted until January 20, 2015, when all the criminal charges were dismissed. He subsequently filed this action.

## II. <u>Summary Judgment Standard</u>

Defendants are entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Ind. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir.2010). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Discussion of Plaintiff's § 1983 Claims

Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States. See 42 U.S.C. § 1983; *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). There is no dispute here that the defendants were acting under color of state law.

*A. False Arrest*

A § 1983 claim for false arrest is a corollary of the Fourth Amendment right to remain free from unreasonable seizures, a right which includes the right to remain free from arrest absent probable cause. *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The analysis of a § 1983 claim for false arrest is "substantially the same" as the analysis for such a claim under New York State

law, and requires a plaintiff alleging false arrest to show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (internal quotation marks omitted) (citing *Broughton v. State*, 37 N.Y.2d 451 (1975)). There is no dispute that plaintiff can establish the first three elements. The parties disagree only as to whether the arrest was privileged. An arrest is privileged when probable cause exists, and probable cause is, therefore, a complete defense to a claim for false arrest. *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)).

1. Probable Cause

There was probable cause to arrest Walker on April 22, 2014. A complaining citizen victim reported that he had been chased by two men, armed with guns, who threatened to kill him, and he identified Walker by name as one of the perpetrators. He then gave a description of Walker which, while discrepant in minor ways as to weight, hairstyle, and hat color, was sufficient to allow an officer to stop Walker and hold him until the complainant could arrive to do a show-up identification. The complainant came to the scene where plaintiff had been stopped and identified plaintiff as one of the people who had menaced him.

An identification by a complaining victim establishes probable cause to arrest unless the circumstances raise doubt as to the complainant's veracity. *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012); *accord Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 1989); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Indeed, the veracity of complaints by citizens who are the victims of the very crimes they report to the police is assumed. *Miloslavsky v. AES Eng'g Society*, 808 F. Supp. 351, 356 (S.D.N.Y. 1992), *aff'd* 933 F. 2d 1534 (2d Cir. 1993).

Plaintiff argues that the circumstances here did raise a doubt about the complainant's veracity. First, he argues that the description the complainant gave the officers was inaccurate as to hairstyle,

6

hat color, and weight. But these discrepancies in the description were minor. Whether the assailant was 250, 300, or 350 pounds may not have been obvious during the chase, but the gist of the complainant's description was that Walker was heavyset. Moreover, a partial inconsistency about the suspect's hat color (green and red versus green and yellow) is minor; and given that the assailant was wearing a hat, a mistake about hair style did not seriously undermine the description. While discrepancies between a witness's description and a suspect's appearance are factors to be considered in evaluating "the totality of the circumstances," they do not, of themselves, negate probable cause. *Celestin v. City of New York*, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008); *see also Hargroves v. City of New York*, 411 F. App'x 378, 385 (2d Cir. 2011) (probable cause found where witness described perpetrator as wearing orange jacket, but plaintiff in fact wore red and blue jacket); *Morales v. City of New York*, 2001 WL 8594 at *5 (S.D.N.Y. Jan. 2, 2001) ("Assuming the undercover officer described a white woman wearing a blue jean outfit and a red shirt, rather than a Hispanic woman with red hair wearing a blue jean outfit and a white shirt, Leone nevertheless was reasonable in believing that Morales fit the description he had been given" because "Morales was coming towards Leone from the area in which the drug transaction had occurred, and . . . Morales was the only person Leone saw fitting the suspect's description.").

Not only are the inconsistencies here minor, but the victim had identified the perpetrator by name and pointed him out to the officers. The rule for which plaintiff is advocating—that once a victim gives a description of a perpetrator, a police officer is not permitted to arrest a suspect if his appearance does not precisely match that description, *even if* the complaining victim who gave the description identifies the perpetrator by name and directly points him out to the officers—has no sound basis.

Plaintiff's next argument is that the complainant's identification of plaintiff after plaintiff had been stopped was an inherently suggestive "show-up" identification and is therefore

7

unreliable. The issue here is not, as it would be in a criminal case, whether the show-up identification was too suggestive to come in as evidence at the criminal trial, or whether it was so suggestive that the victim would not even be permitted to identify the defendant in the courtroom. The issue is only whether the victim's identification at the show-up, when combined with his description of Walker, his identification of Walker by name, and the fact that Walker was stopped at the location that the victim had indicated the perpetrator was walking toward amounted to probable cause to arrest.

The answer to that question is clearly yes. There is no evidence in the record that any police officer instructed the victim to identify plaintiff or led the victim into identifying plaintiff in an unduly suggestive way. Plaintiff argues that a show-up identification is inherently incapable of providing probable cause, because "[s]uggestive procedures such as showups are disapproved of because they increase the likelihood of misidentification." (Pl's. Mem. at 10.) On the contrary, show-up identifications are a necessary and important part of policing and are not, as plaintiff suggests, "disapproved of" in this Circuit. *See, e.g., Brisco v. Ercole*, 565 F.3d 80, 91 (2d Cir. 2009) ("[W]here an officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make immediate reasonable efforts to confirm the suspect's identity . . . . Here the procedure enabled the officers to determine whether they 'had their man' while the witness's memory was still fresh"); *United States v. Bautista*, 23 F.3d 726, 730 n.6 (2d Cir. 1994) ("Indeed, rather than excoriate the law enforcement officials involved for conducting an unduly suggestive procedure, one might commend them for their immediate efforts to ascertain and release innocent people").

The third fact plaintiff points to in his argument that the officers should not have relied on the complainant's identification of Walker is that no gun was found on Walker or in the

surrounding area, even though Officer Penaranda canvassed the scene. As an initial matter, it is not clear from the parties' statements of undisputed facts that this search for the gun was completed prior to plaintiff's arrest. The test for probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007); *see Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). Even if the search had been completed, the officers' inability to locate a gun does not mean that the gun never existed. The complainant called 911 at 9:55 a.m., and plaintiff was not arrested until 10:40 a.m., forty-five minutes later. Sufficient time had elapsed for the perpetrator to dispose of the gun, and therefore the failure to find a gun does not mean that plaintiff never possessed a gun and does not vitiate probable cause. *Salmon v. Hansen*, 2011 WL 6010913 at *8 (N.D.N.Y. Dec. 1, 2011). Indeed, as the court in *Salmon* recognized, *convictions* involving the possession of weapons have been upheld in the absence of recovered guns. *Id.* (collecting such cases).

Finally, plaintiff argues there was no probable cause for his arrest because video footage from the area of the crime was exculpatory.[4] The video had not been seen by the officers at the moment plaintiff was arrested, nor was it ever seen by Sergeant Capella, who was the one who radioed the non-party officers who had stopped plaintiff to place plaintiff under arrest based on the victim's identification; therefore it is not part of the probable cause inquiry on plaintiff's false arrest claim. *Zellner*, 494 F.3d at 369.[5]

---

[4] The video was not provided as part of the record on summary judgment and, based on the parties' briefing, does not appear to have been retained after its initial viewing by Officer Avenger.

[5] Plaintiff argues that the video had been checked before Officer Dill completed plaintiff's arrest paperwork, and, because it did not show the incident, plaintiff should have been released. While this has no bearing on plaintiff's false arrest claim, it could implicate a false imprisonment claim, which plaintiff does not plead. The Second Circuit has not addressed the issue of whether an officer

9

Because plaintiff was identified by name, description, and finally pointed out to police officers by a victim, and because the circumstances did not call the complainant's credibility into question, there was probable cause for plaintiff's arrest. Therefore, plaintiff's false arrest claim must be dismissed against all the defendant officers.

B. *Other § 1983 claims*

A search of an "arrestee's person and the area within his immediate control" is lawful when incident to a lawful arrest. *Morris v. City of N.Y.*, 2013 WL 5781672, at *8 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015). Because there was probable cause for plaintiff's arrest, the search of his person was lawful. *See Virginia v. Moore*, 553 U.S. 164, 176–77 (2008). Similarly, neither plaintiff's failure to intervene claim or *Monell* claim can be sustained in the absence of an underlying constitutional violation. *Feinberg v. City of New York*, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the [failure to intervene] analysis ends"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal

---

can be liable for false imprisonment if, after a lawful arrest, probable cause dissipates and the suspect is not released from custody. The First Circuit has held, consistent with the Restatement of Torts, that "an affirmative duty to release [an arrestee] arises only if the arresting officer ascertains beyond a reasonable doubt that the suspicion (probable cause) which forms the basis for the privilege to arrest is unfounded." *Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986); Restatement (Second) of Torts § 134, Comment f (1965). I do not find it necessary to reach this issue because, even assuming that such a claim is cognizable in the Second Circuit, probable cause did not dissipate merely because the video did not capture the incident. Plaintiff's testimony that the cameras "record everything" is conclusory and without a basis of knowledge, particularly since he admits the cameras pan back-and-forth. Fed. R. Civ. P. 56(c)(2). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Ev. 602. Plaintiff does not provide any evidence sufficient to support a finding that he has personal knowledge that the cameras "record everything." In sum, plaintiff is unable to establish from the fact that the incident was not captured by the video cameras that the incident did not occur.

defendants' liability under *Monell* was entirely correct."). As plaintiff is unable to establish that any constitutional violations occurred, these claims must also be dismissed.

## IV. <u>Sealing of Motion for Summary Judgment</u>

Defendants request leave to file the papers in this motion under seal to protect the identity of the complaining witness. In determining whether to grant a motion to seal, a court must weigh the presumption in favor of public access to judicial documents against "higher values" which may include witness safety. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir. 2000). Where sealing is necessary to protect higher values, any sealing order must be narrowly tailored to achieve that aim. *See id.* at 120 (quoting *In re New York Times Co.*, 828 F.3d 110, 116 (2d Cir.1987).

Here, the safety of the complaining witness and his family constitutes a "higher value" which should be protected by filing of redacted versions of the summary judgment papers. As defendants have made this motion, and as they are best-positioned to know what information must be redacted in order to protect the complaining witness, defendants are directed to complete the necessary redactions and file a redacted set of all papers on this motion, including plaintiff's papers and defendants' motion to seal, within two weeks of this Order. The filing of the redacted versions shall be accompanied by a letter setting forth the justification for the redactions under *Lugosch*. Should plaintiff object to the redactions submitted by defendants, he should submit a letter setting forth his objections within two weeks of defendants' filing of the redacted motion papers.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment on plaintiff's false arrest, failure to intervene, and unlawful search claims are GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants on all claims and close the case.

SO ORDERED.

/s/ Nina Gershon
NINA GERSHON
United States District Judge

Dated: June 26, 2017
      Brooklyn, New York